**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION**

| | | |
|---|---|---|
| **VICTOR DAVID LOPEZ,** | § | |
| **Petitioner,** | § | |
| | § | |
| **v.** | § | **Cause No. EP-25-CV-390-KC** |
| | § | |
| **CHARISMA EDGE, *Warden*, FCI La Tuna,** | § | |
| **Respondent.** | § | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Petitioner Victor David Lopez, Federal Prisoner Number 98807-380, challenges the execution of his sentence through a *pro se* petition for a writ of habeas corpus under 28 U.S.C. § 2241. Pet'r's Pet., ECF No. 1. His petition is dismissed for failure to exhaust his administrative remedies.

### BACKGROUND

Lopez is a 43-year-old prisoner confined at the La Tuna Federal Correctional Institution in Anthony, Texas, which is within the jurisdiction of this Court. *See* Federal Bureau of Prisons, Find an Inmate, www.bop.gov/inmateloc (search for Reg. 98807-380, last visited Mar. 17, 2026). His projected release date is January 1, 2034. *Id*.

United States Customs and Border Protection officers encountered Lopez when he entered the United States from Mexico through a port of entry at Eagle Pass, Texas. *United States v. Lopez*, 2:18-cr-56-AM-1 (W.D. Tex.), Plea Agreement, ECF No. 27 at 10. They discovered that all four tires contained fabricated metal compartments which held multiple bundles of two different substances, ultimately confirmed by chemical analysis to be methamphetamine and heroin. They weighed the substances and determined that the amount of methamphetamine exceeded 500 grams, and the amount of heroin exceeded one kilogram.

Lopez pleaded guilty to conspiracy to import more than 500 grams of methamphetamine

in violation of 21 U.S.C. §§ 952(a), 960(a)(l), 960 (b)(1), and 963. *Id.*, J. Crim. Case, ECF No. 45. He was sentenced to 240 months' imprisonment.

Lopez now challenges "the manner in which Good Time Credits, First Step Act Credits, and Second Chance Act Credits are applied, and [his projected] release date is determined." Pet'r's Pet., ECF No. 1 at 1. He argues that his projected release date "is contrary to the First Step Act (FSA), the Second Chance Act (SCA), and the Bureau of Prisons (BOP) mandate regarding the application of" time credits. *Id.* at 2. He maintains that he is entitled to FSA credits (FTCs) from "December 17, 2017, [to] July 15, 2021, due to [his] productive activity." *Id.* at 3. He contends that if the BOP had properly applied his FTCs, he would have been placed in a residential reentry center on or about February 15, 2025. *Id.* He asks that the Court order Respondent Charisma Edge "to properly provide all Good Time, First Step Act, and Second Chance Act Credits that [he] is entitled to." *Id.* at 5.

## STANDARD OF REVIEW

A prisoner may attack "the manner in which his sentence is carried out or the prison authorities' determination of its duration" through a petition for a writ of habeas corpus under 28 U.S.C. § 2241. *Pack v. Yusuff*, 218 F.3d 448, 451 (5th Cir. 2000) (citations omitted). To prevail, a prisoner must show he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c).

## ANALYSIS

### A. Exhaustion

Lopez does not claim that he exhausted his administrative remedies or that any exception to the exhaustion requirement applies. *See* Pet'r's Pet., ECF No. 1. Indeed, he has not submitted

any formal administrative requests or appeals to prison authorities while in BOP custody. *See* Resp't's Resp., Ex. 1 (Decl. of Michael Caldwell), ECF No. 5-2 at ¶ 10 & Attach. 4. Instead, he argues that exhaustion is not required "[b]ecause Habeas Corpus under [28] U.S.C. § 2241 is a constitutional right, … there can be no rule … which would abrogate [it] such as regarding exhaustion of administrative remedies." Pet'r's Pet., ECF No. 1 at 5. He is wrong. His argument overlooks the important role that exhaustion plays in the early resolution of disputes.

"The basic purpose of the exhaustion doctrine is to allow an administrative agency to perform functions within its special competence—to make a factual record, to apply its expertise, and to correct its own errors so as to moot judicial controversies." *Parisi v. Davidson*, 405 U.S. 34, 37–38 (1972) (citations omitted); *see also Chavez v. Bragg*, EP-09-cv-6-KC, 2009 WL 506549, at *1 (W.D. Tex. Jan. 21, 2009) (noting that "[e]xhaustion serves the twin purposes of protecting administrative agency authority and promoting judicial efficiency," and that "[w]hen an agency has the opportunity to correct its own errors, a judicial controversy may well be mooted"; further noting that exhaustion "may produce a useful record for subsequent judicial consideration") (internal citations and quotations marks omitted).

Moreover, the Fifth Circuit has long held that the BOP should be permitted to administratively rectify an error if it fails to properly calculate a sentence. *See Smith v. Thompson*, 937 F.2d 217, 219 (5th Cir. 1991) (explaining that an agency should be given the opportunity to correct its own errors before a party seeks judicial intervention). "In the event that a prisoner feels he has been improperly refused credit for time he has served in … custody, the prisoner must first 'seek administrative review of the computations of [his] credit, and, once [he has] exhausted [his] administrative remedies, [the] prisone[r] may only then pursue judicial review of these

computations.'" *United States v. Setser*, 607 F.3d 128, 133 (5th Cir. 2010) (quoting *United States v. Dowling*, 962 F.2d 390, 393 (5th Cir. 1992)); *see also Falcetta v. United States*, 734 F. App'x 286, 287 (5th Cir. 2018) (holding that "dismissal for lack of jurisdiction was appropriate because [the petitioner] failed to show that he exhausted his sentencing credit claim fully through the multi-step BOP exhaustion procedure prior to filing his § 2241 petition.").

Consequently, Lopez "must first pursue all available administrative remedies" before seeking relief under § 2241. *Fillingham v. United States*, 867 F.3d 531, 535 (5th Cir. 2017). And his exhaustion in this context means "proper exhaustion," including his compliance with all administrative deadlines and procedures established by the agency with custody over him. *Cf. Woodford v. Ngo*, 548 U.S 81, 90 (2006) (discussing exhaustion in the context of the Prison Litigation Reform Act).

While there are exceptions to the exhaustion requirement "where the available administrative remedies either are unavailable or wholly inappropriate to the relief a prisoner seeks, or where the attempt to exhaust such remedies would itself be a patently futile course of action," such exceptions apply only in "extraordinary circumstances." *Fuller v. Rich*, 11 F.3d 61, 62 (5th Cir. 1994) (citations omitted). A petitioner bears the burden of demonstrating such circumstances.

The Court finds that Lopez has failed to exhaust his administrative remedies or carry his burden of proving the futility of an administrative review. *See Fuller*, 11 F.3d at 62 (explaining federal prisoners must exhaust "administrative remedies before seeking habeas relief in federal court under 28 U.S.C. § 2241."). It notes that dismissal on this basis alone is warranted. *See Rivkin v. Tamez*, 351 F. App'x 876, 877–78 (5th Cir. 2009) (per curiam) (affirming dismissal of

4

prisoner's § 2241 petition for failure to exhaust administrative remedies). But even if Lopez had properly exhausted his claims, the Court would not grant him the § 2241 relief he seeks.

**B. Good Time Credits (GTCs)**

Lopez asks the Court to order Edge to provide him with all the Good Time Credits (GTCs) that he is entitled to receive. Pet'r's Pet., ECF No. 1 at 5.

Lopez, like any federal prisoner, may earn up to 54 days of GTCs for each year of his sentence. 18 U.S.C. § 3624(b)(1). If he does not lose any GCTs for disciplinary infractions, he is projected to earn 1,080 days of GCTs before he completes his 20-year sentence. Gov't's Resp., Ex. 2 (Decl. of Bertha Tovar), ECF No. 5-3 at ¶ 6. Application of these GCTs will result in a projected release date on January 1, 2035, without the inclusion of any other time credits. *Id.*

To the extent that Lopez may be claiming that he is entitled to GCTs for the period December 17, 2017 (the date of his arrest) until July 15, 2021 (the date of his arrival at his designated BOP facility), he is wrong.

A federal prisoner must be serving his term of imprisonment to earn GCTs. *See* 18 U.S.C. § 3624(b)(1) ("[A] prisoner who is serving a term of imprisonment … may receive credit toward the service of the prisoner's sentence …"). A federal prisoner does not begin his sentence until he is received into custody awaiting transportation to the official detention facility at which his sentence is to be served—or when he arrives voluntarily at the facility to begin serving his sentence. *See* 18 U.S.C. § 3585(a) ("A sentence to a term of imprisonment commences on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served."). Thus, a prisoner does not begin earning GCT until he begins serving his sentence.

Lopez is not entitled to GCTs for the period December 17, 2017 (the date of his arrest) until July 15, 2021 (the date of his arrival at his designated BOP facility). Lopez has not shown that the BOP has failed to accurately calculate his GTCs.

**C. First Step Act (FSA) Earned Time Credits (FTCs)**

Lopez argues that under the First Step Act (FSA) he is entitled to Earned Time Credits (FTCs) for the period between his arrest (December 17, 2017) and the date he arrived at a BOP facility to serve his sentence (July 15, 2021). Pet'r's Pet., ECF No. 1 at 3. He is mistaken.

The FSA allows an eligible prisoner to earn time credits toward time in pre-release custody or supervised release. 18 U.S.C. § 3632(d)(4)(A). To determine eligibility, the FSA requires a prisoner to first undergo "a risk and needs assessment" to establish whether he has a "minimum, low, medium, or high risk for recidivism." *Id*. § 3632(a)(1). The risk and needs assessments are made up of two components: the Prisoner Assessment Tool Targeting Estimated Risk and Needs (PATTERN) score and the Standardized Prisoner Assessment for Reduction in Criminality (SPARC-13). Resp't's Resp., Ex. 2, (Decl. of Bertha Tovar), ECF No. 5-3 at ¶ 9. The PATTERN score is designed to: (1) determine a prisoner's recidivism risk; (2) assess a prisoner's risk of violent or serious misconduct; (3) determine the type and amount of programming appropriate to reduce a prisoner's risk of reoffending; (4) regularly assess a prisoner's recidivism risk and programming needs; and (5) determine when a prisoner is ready to transfer to prerelease custody or supervised release. 18 U.S.C. § 3632(a). SPARC-13 is used to examine the prisoner in areas which can be targeted to reduce his risk of recidivating. Based on the results of SPARC-13, the BOP staff will recommend evidence-based recidivism reduction (EBRR) programs and productive activities (PAs) for a prisoner consistent with his needs.

The FSA also creates incentives to encourage prisoners to participate in EBRR programs and PAs. 18 U.S.C. § 3632(d). It gives qualifying prisoners the opportunity to earn ten days of FTCs for every 30 days of successful participation in EBRR programs and PAs. *Id.* § 3632(d)(4)(A)(i). It allows qualifying offenders at a "minimum" or "low risk" of recidivating to earn an additional five days of FTCs if they do not increase their risk levels over two consecutive assessments. *Id.* § 3632(d)(4)(A)(ii). It permits qualifying inmates to apply FTCs toward prerelease community-based placement in a residential reentry center or home confinement. 18 U.S.C. § 3624(g)(2); 28 C.F.R. § 523.44(b)–(c). And, at the discretion of the Director, it permits qualifying prisoners to apply FTCs toward their early release to supervision. 18 U.S.C. § 3624(g)(3); 28 C.F.R. § 523.44(d).

Additionally, according to § 3632(d)(4)(B), "[a] prisoner may *not* earn time credits … for an evidence-based recidivism reduction program that the prisoner successfully completed … during official detention prior to the date that the prisoner's sentence commences under section 3585(a)." 18 U.S.C. § 3632(d)(4)(B) (emphasis added). Under § 3585(a), "[a] sentence to a term of imprisonment commences on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served." *Id.* § 3585(a).

Here, Lopez was not sentenced until February 10, 2021, and he is clearly prohibited by statute from earning FTCs prior to that date. *Id.* § 3632(d)(4)(B)(ii). After his sentencing but prior to his arrival at the official detention facility at which he was to serve his sentence—the Federal Correctional Institution at Fort Dix, New Jersey—Lopez was not housed in a BOP facility. Resp't's Resp., Ex. 2, (Decl. of Bertha Tovar), ECF No. 5-3 at ¶ 18. As a result, he was not entitled

7

to FTCs before he arrived at Fort Dix. *Id.* (citing BOP Program Statement 54101.01 (First Step Act of 2018 – Time Credits: Procedures for Implementation of 18 U.S.C. § 3632(d)(4)) at 10) ("[A]n inmate cannot earn FTC when not in Bureau custody, including when in U.S. Marshals Service custody prior to arriving at their designated facility, regardless of where they are housed, or once released to their supervised release term.").

Lopez was scored as low risk upon his arrival at his designated BOP institution on July 15, 2021. Resp't's Resp., Ex. 2, (Decl. of Bertha Tovar), ECF No. 5-3 at ¶ 15. At that time, he began earning ten days of time credits for every 30 days of successful participation. After his second consecutive minimum risk assessment, he began earing an additional five days of time credits. As of November 19, 2025, Lopez had earned a total of 600 FTCs. In accordance with BOP policy, 365 of his FTCs were applied toward his early transfer to supervised release. With the application of these FTCs, Lopez's release date was changed from January 1, 2035, to January 1, 2034. The remaining FTCs may be applied to his transfer to prerelease custody.

Several district courts in the Fifth Circuit have denied habeas petitions where an inmate sought FTCs for the period between sentencing and their arrival at their designated BOP facility. *See Hogan v. Hijar*, EP-24-cv-360-DB (W.D. Tex. April 4, 2025), Order Granting Respondent's Motion for Summary Judgment and Denying Petitioner's Petition (unpublished), ECF No. 14 at 4-6 (denying petition where inmate sought credits from the date of sentencing until his arrival at his designated BOP facility 305 calendar days later; noting that "[t]here are several practical reasons for denying a prisoner FTCs before he enters BOP custody," including, among others, "because the prisoner has not completed the risk and needs assessment, BOP staff members cannot make a recommendation concerning his participation in an EBRR program or PA"); *Stinson v.*

8

*Martinez*, No. 2:23-cv-0751, 2024 WL 4969169, at *3-8 (W.D. La. Nov. 12, 2024) (Magis. Ct.) (explaining that "[b]ecause Petitioner did not undergo a risk and needs assessment until he arrived at his designated BOP facility, it follows that he could not have 'successfully participated' in any recommended programming before that time"; recognizing that "[t]o allow an inmate to earn time credits outside of the system established by the FSA would essentially void large portions of the FSA and render them meaningless") (citations omitted), *R. & R. adopted* by 2024 WL 4965618 (W.D. La. Dec. 3, 2024), *cert. denied before judgment*, 145 S. Ct. 1345 (2025), *and appeal dismissed as moot*, No. 24-30793, 2025 WL 2017872 (5th Cir. July 18, 2025); *Feliz v. Martinez*, Docket No. 2:24-cv-0701, 2024 WL 4901948, at *2 (W.D. La. Oct. 31, 2024) (Magis. Ct.) ("Because Petitioner did not undergo a risk and needs assessment until he arrived at his designated BOP facility, it follows that he could not have 'successfully participated' in any recommended programming before that time."), *R. & R. adopted by* 2024 WL 4898079 (W.D. La. Nov. 26, 2024).

Another district court in the Fifth Circuit has reached a different conclusion. *See Baker v. Rosalez*, 1:24-cv-1362-RP, 2025 WL 2299373, at *1-2 (W.D. Tex. Aug. 8, 2025) (adopting R. & R. that "found, like numerous other courts, that inmates become eligible to earn time credits under the [FSA] beginning on their sentencing date …," and ordering that respondent recalculate petitioner's FSA time credits to include time spent in custody awaiting transfer to his designated BOP facility) (citation omitted).

Relying on the language in 18 U.S.C. § 3632(d)(4)(B) and 18 U.S.C. §3585(a), this Court finds that Lopez was not entitled to accumulate FTEs before his arrival at his designated facility, Fort Dix, on July 15, 2021. Moreover, this Court observes that Lopez has not provided evidence

9

that he participated in and successfully completed EBRR programs or PAs before he first arrived at Fort Dix. Instead, he has relied on conclusory and unsupported claims that he "was engaged in productive activity" that "consisted of employment within the prison facility." *See* Pet'r's Pet., ECF No. 1 at 1, 3; Pet'r's Resp., ECF No. 6; *Murphy v. Dretke*, 416 F.3d 427, 436–37 (5th Cir. 2005) ("[Petitioner's] conclusory allegations alone are insufficient for federal habeas relief [because Petitioner] has not met Rule 2(c) of the Rules Governing Section 2254 Cases in the United States District Courts, which requires a petitioner to plead facts in support of his claims."). His "conclusory allegations do not raise a constitutional issue in a habeas proceeding" *Ross v. Estelle*, 694 F.2d 1008, 1012 (5th Cir. 1983)

Lopez has not shown that the BOP has improperly deprived him of any FTCs or violated his constitutional rights. 28 U.S.C. § 2241(c).

### D. Second Chance Act (SCA) Placement

Lopez finally asks the Court to order Edge to provide him with all the Second Chance Credits (SCA) that he believes he is entitled to receive. Pet'r's Pet., ECF No. 1 at 5.

The SCA provides a prisoner reentering society after incarceration with resources for post-imprisonment rehabilitation services, with the goal of reducing recidivism and enhancing public safety. Pub. L. No. 110-199, 122 Stat. 657. It authorizes funding for drug treatment, job training and placement, educational services, and other services or support needed to rehabilitate a prisoner and reduce recidivism. *United States v. Wessels*, 539 F.3d 913, 915 (8th Cir. 2008) (Bright, J., concurring). It also addresses a prisoner's placement in pre-release custody in a community corrections facility such as a halfway house. 18 U.S.C. § 3624(c)(1), (2). It grants the BOP Director the *discretion* to place a prisoner in a community corrections facility for up to twelve

10

months. *Id*. § 3624(c)(1); *Jones v. Bergami*, No. EP-19-cv-254-DB, 2019 WL 4889735, at *3 (W.D. Tex. Oct. 2, 2019). It "makes no mention of federal courts and does not grant any authority to the federal courts" to order a prisoner's placement in in pre-release custody. *United States v. Calderon*, 801 F. App'x 730, 732 (11th Cir. 2020).

The Supreme Court has consistently held that a prisoner has no constitutional right to be confined in any place, including a community corrections facility. *See McKune v. Lile*, 536 U.S. 24, 39 (2002) ("It is well settled that the decision where to house inmates is at the core of prison administrators' expertise."); *Sandin v. Conner*, 515 U.S. 472, 478 (1995) ("the Due Process Clause did not itself create a liberty interest in prisoners to be free from intrastate prison transfers."); *Meachum v. Fano*, 427 U.S. 215, 224 (1976) ("The conviction has sufficiently extinguished the defendant's liberty interest to empower the State to confine him in any of its prisons.").

The Attorney General—and by delegation the BOP—has exclusive authority and discretion to designate the place of an inmate's confinement. *Moore v. United States Att'y Gen.*, 473 F.2d 1375, 1376 (5th Cir. 1973); *Ledesma v. United States*, 445 F.2d 1323, 1324 (5th Cir. 1971). "[A]ny approach that puts the judicial branch in charge of designating the place of confinement for a federal prisoner—no matter how well justified on utilitarian grounds—collides with 18 U.S.C. § 4082(b), which gives the Attorney General unfettered discretion to decide where to house federal prisoners." *In re Gee*, 815 F.2d 41, 42 (7th Cir. 1987).

Thus, to the extent that Lopez requests that the Court order his placement in a residential facility, the Court has no authority under the SCA to grant the relief he seeks.

### CONCLUSION AND ORDERS

The Court concludes that Lopez has failed to exhaust his administrative remedies. The

Court accordingly enters the following orders:

**IT IS ORDERED** that Victor David Lopez's "Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241" (ECF No. 1) and his civil cause are **DISMISSED WITHOUT PREJUDICE** for failure to exhaust his administrative remedies.

**IT IS FURTHER ORDERED** that all pending motions, if any, are **DENIED** as moot.

**IT IS FINALLY ORDERED** that the District Clerk shall **CLOSE** this case.

SIGNED this 21st day of March, 2026.

_____
KATHLEEN CARDONE
UNITED STATES DISTRICT JUDGE